IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JMA INVESTMENTS,<br><br>   Plaintiffs,<br>v.<br><br>MT. HAWLEY INSURANCE COMPANY;<br>and DOES 1 through 25, inclusive,<br><br>   Defendants.<br>_____/ | No. C 13-04581 RS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

In 2007, JMA Investments ("JMA") filed a complaint against Golden Gate General Contractors, Inc. ("Golden Gate") and its principal, Deniz Salon, in San Mateo Superior Court seeking damages arising from work performed by Golden Gate on a hotel and restaurant owned by JMA in Monte Rio, California. Golden Gate and Salon tendered their defense to their insurer, Mt. Hawley Insurance Company ("Mt. Hawley"), which declined to defend the underlying suit. JMA was awarded $1 million against Golden Gate as a result of binding arbitration to which Golden Gate elected not to appear, having previously entered into a settlement with JMA for $90,000, payable by another insurer, and assignment of all rights against Mt. Hawley to JMA. JMA in turn filed this suit against Mt. Hawley in San Francisco Superior Court, seeking

declaratory relief on Mt. Hawley's duty to defend and indemnify in the underlying suit and damages for related claims. Mt. Hawley removed on the basis of diversity jurisdiction.

JMA moves for partial summary judgment on the issue of Mt. Hawley's duty to defend. Mt. Hawley in turn filed a cross-motion for summary judgment. According to Mt. Hawley, Golden Gate's coverage was canceled before it began work on JMA's property; Mt. Hawley, therefore, had no duty to defend Golden Gate in the underlying suit and is not liable to JMA in this action. Considering all of the evidence presented, and taking all inferences in favor of the non-moving party, Mt. Hawley's motion for summary judgment is granted because the policy at issue was no longer in effect when Golden Gate began work on JMA's property. JMA's argument that Mt. Hawley either waived or is estopped from asserting policy expiration is unavailing, and its motion for summary judgment is denied for the reasons explained below.

## III. FACTUAL BACKGROUND

On May 7, 2003 (the effective date of the policy at issue), Golden Gate's retail insurance broker Target Financial & Insurance Services ("Target") sent a message to Lemac & Associates ("Lemac"), another insurance broker operating as the managing general agent for Mt. Hawley, requesting commercial general liability insurance coverage for Golden Gate. The letter to Lemac, a copy of which was retained in Mt. Hawley's file for Golden Gate, indicated Target would "set up financing with Mountain West Premium Finance at 25% down." Pursuant to these communications from Target and Lemac, Mt. Hawley issued a Commercial General Liability Policy to Golden Gate effective May 7, 2003 to May 7, 2004. The policy generally provided for $1 million in coverage for bodily injury or property damage caused by an occurrence during the policy period, subject to various exclusions.

On September 3, 2003, Mountain West sent Target a notice of cancellation for non-payment effective August 27, 2003. The notice, which was copied to Golden Gate, stated the policy "IS HEREBY CANCELLED BY THE LENDER FOR NONPAYMENT, PURSUANT TO THE AUTHORITY GIVEN US BY THE POWER OF ATTORNEY IN YOUR 'PREMIUM FINANCE' AGREEMENT." On October 2, 2003, Target received a facsimile letter from

Lemac advising that no request for reinstatement had been received and that Mountain West's Notice of Cancellation would be processed. As instructed, Mt. Hawley terminated the policy effective August 27, 2003, issuing a policy change endorsement to Lemac for distribution to the insured. Mt. Hawley also issued a premium refund, a copy of which was retained in Target's file for Golden Gate.

In May 2007, JMA sued Golden Gate and Salon for damages arising out of the construction and repair work performed by Golden Gate on the Highland Dell Lodge, a historic hotel and restaurant owned by JMA. As alleged in the underlying complaint, JMA and Golden Gate agreed that Golden Gate would begin work on the property in February 2004, with all work to be substantially completed by July 15, 2004, two months after the policy was originally set to expire. Work continued, however, until July 2006 as a result of various delays and subsequent agreements—written and oral—between the two parties. At that time, according to the underlying complaint, Golden Gate "unlawfully and unilaterally" ceased work, resulting in more than $1,000,000 in unspecified damages to JMA.

JMA's contract with Golden Gate required that such disputes be submitted to binding arbitration. Accordingly, the parties in the underlying dispute entered a stipulation for binding arbitration and stay of the underlying state court proceeding, and the matter was referred to the American Arbitration Association pursuant to its Commercial Arbitration Rules. Golden Gate in turn asserted a claim for the balance owed on its construction contract with JMA. In its cross-claim before the arbitrator, JMA elaborated on its allegations against Golden Gate, asserting the company failed to install various items such as roofing, beams, doors, downspouts, and balconies, improperly performed electrical work (which allegedly caught fire), and poorly constructed a staircase (which allegedly broke when used by patrons). In its motion for summary judgment, JMA further asserts that "between February and July 2004, Golden Gate removed the roof structures and failed to properly cover them, so that various interior components of the structures, including the hardwood floors, were damaged."

In October 2008, Golden Gate notified Mt. Hawley of the JMA suit and arbitration action and tendered defense and indemnity of the claims to the insurance company. In a letter dated November 12, 2008, Mt. Hawley advised Golden Gate that it did not appear to be entitled to coverage on various grounds and requested additional information. Mt. Hawley issued a second letter denying coverage on November 12, 2008, on substantially the same grounds and again requested additional information. Upon receiving that additional information from Golden Gate, Mt. Hawley again denied coverage on January 19, 2010, for two reasons. First, because Golden Gate's work at the hotel continued into 2006, well after the expiration date of the original policy, any damages would have arisen out of Golden Gate's ongoing operations and would therefore be excluded from coverage. Second, even if Golden Gate had completed its work during the policy period, any property damage was either to Golden Gate's own work or arose therefrom and was therefore subject to the "your work" policy exclusion. Each of these three letters expressly reserved Mt. Hawley's right to assert other rights or defenses under the contract. More significantly, each of the letters referenced the effective policy period as May 7, 2003 to May 7, 2004. None stated the policy had been terminated early at the direction of Mountain West.

In March 2010, Golden Gate advised Mt. Hawley of a potential settlement in the underlying arbitration action releasing its current insurer, James River Insurance Company, and requested that Mt. Hawley reconsider its position. On March 11, 2010, Mt. Hawley's counsel responded to an email from Golden Gate's attorney acknowledging previous correspondence, continuing to deny coverage or a duty to defend, and attaching a copy of the Mt. Hawley insurance policy that listed the effective dates as May 7, 2003 to May 7, 2004, with no mention of the early termination. According to JMA, the parties relied upon this copy of the policy to reach the settlement agreement in the underlying case.

In February 2013, shortly before the claim proceeded to arbitration, the parties to the underlying suit (JMA, Golden Gate, and its insurer, James River) reached a settlement agreement in the underlying suit. Golden Gate and Salon agreed to dismiss their claims against JMA with prejudice and assign all of their rights against Mt. Hawley to JMA. James River agreed to pay

1  $90,000 to JMA and to assign to JMA its right to contribution from Mt. Hawley.  In return, JMA
2  agreed to dismiss its claims against Salon and to provide Golden Gate with a covenant not to
3  execute its claims in the action and arbitration against Golden Gate; JMA, however, retained its
4  right to proceed with its arbitration action against Golden Gate.  Both JMA and Golden Gate
5  agreed to release all claims against James River.  On March 18, 2013, an arbitration hearing was
6  held, which Golden Gate elected not to attend.  Based on the uncontested evidence offered by
7  JMA, the arbitrator awarded JMA $1 million against Golden Gate.

8  JMA then brought this suit seeking construction and enforcement of the commercial
9  general liability policy issued by Mt. Hawley to Golden Gate.  JMA now moves for partial
10 summary judgment on the first cause of action for declaratory relief on the issue of whether Mt.
11 Hawley had a duty to defend Golden Gate in the underlying suit.  Mt. Hawley responded with an
12 opposition and cross-motion for summary judgment, asserting that the policy was terminated at
13 the direction of Golden Gate's premium finance company before Golden Gate began, much less
14 completed, work on JMA's property.

## II. LEGAL STANDARD

16 Summary judgment is appropriate "if the movant shows that there is no genuine dispute
17 as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.
18 Proc. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine
19 issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R.
20 Civ. Proc. 56(c)(1)(A).  If the movant succeeds, the burden then shifts to the nonmoving party to
21 "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3; *see also*
22 Fed. R. Civ. Proc. 56(c)(1)(B).  A genuine issue of material fact is one that could reasonably be
23 resolved in favor of the nonmoving party, and which could "affect the outcome of the suit."
24 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must view the evidence in
25 the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.
26 *See id.* at 255.

"When parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb.1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.* Federal Rule of Civil Procedure 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record . . . or [] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

## IV.  DISCUSSION

Under California Law, a duty to defend lies only where the facts alleged against the insured, or otherwise made known to the insurer, create a potential for covered liability.  "This duty, which applies even to claims that are 'groundless, false, or fraudulent,' is separate from and broader than the insurer's duty to indemnify." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995) (citations omitted).  "It extends beyond claims that are actually covered to those that are merely potentially so—but no further." *Buss v. Superior Court*, 16 Cal. 4th 35, 46.  Although "basic coverage provisions are construed broadly in favor of affording protection, . . . clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010).  The duty is on the insured to show the claims are encompassed within the basic coverage provisions but on the insurer to show whether any exclusions apply. *Id.*  Nothing more is required than "a bare 'potential' or 'possibility' of coverage" to trigger a duty to defend. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993).

When interpreting an insurance contract, the burden is on the insured in the first instance to bring the claim within the basic scope of coverage defined by the insuring agreement. *Waller*, 11 Cal. 4th at 16.  It is then left to the insurer to prove that its coverage obligations are excused

either by operation of the policy's exclusionary terms, *Minkler*, 49 Cal. 4th at 322, or other affirmative defense. When the insurer's affirmative defense is that the insured failed to comply with one or more policy conditions, the insurer must also show prejudice. *Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303, 305 (1963).

A. <u>Policy Termination</u>

Mt. Hawley claims it is entitled to summary judgment because it terminated Golden Gate's policy as instructed by Golden Gate's premium finance company before the contractor began work on JMA's property. According to Mt. Hawley, it therefore does not owe any duty to defend or indemnify Golden Gate in the underlying suit.

Mt. Hawley has submitted evidence that it received a notice of cancellation from Mountain West. As instructed, and consistent with its obligation under § 673, it canceled Golden Gate's policy effective August 27, 2003, and thereafter submitted notices of termination to Lemac and Target, to be further communicated to Golden Gate. A copy was included in Target's files, along with a copy of the premium refund check from Mt. Hawley to Mountain West. JMA does not contest the authenticity of any of these documents or that Mountain West instructed Mt. Hawley to terminate coverage.[1] Instead, JMA argues Mt. Hawley has not shown that Mountain West had the authority to act on behalf of Golden Gate. In particular, JMA argues Mt. Hawley has failed to submit a copy of the agreement between Golden Gate and Mountain West. The scheme established by the California insurance code, however, does not require such proof.

California Insurance Code § 673 governs termination of an insurance contract when the policy is subject to a payment loan agreement. When the right to cancel has been transferred or assigned by the insured to a premium financing company, § 673 details the exclusive process by which a lender may exercise that right because of a default by the insured under the premium payment loan agreement. § 673(b). In the event of default by the insured, § 673 provides for various required written notices from the lender to the insured and the insurer before the lender is

---

[1] JMA does, however, contest that any of these communications suffice to show that Golden Gate received notice that the policy was terminated. That issue is addressed below.

entitled to exercise its right to cancel.[2] Subdivision (i) governs the process once written notice of cancellation has been transmitted to the insurer: "A lender which sends a written exercise of cancellation right or a written notice of cancellation to an insurer . . . thereby represents that he or she has a valid right to do so and to receive the unearned premium. If the lender thereby accomplishes the cancellation and receives an unearned premium, such representation shall be conclusive as between the insurer and the lender. An insurer relying upon the written exercise of that right containing a confirmation of cancellation date and giving, when applicable, notice as required by subdivision (e), shall be relieved from complying with any other duty or form of cancellation required by this code." § 673(i).

The California cases upon which the parties rely do not resolve the issue presented here. For example, plaintiff cites *California Indemnity Insurance Premium Finance Company v. Fireman's Fund Insurance Company*, 40 Cal. App. 4th 1633 (1996), for the proposition that a premium finance agreement is invalid absent written authorization by the insured. That case, however, addresses only whether the lender or insurer should bear the risk for the loss of a premium in a case in which the insured's agent fraudulently entered into a premium finance arrangement without the insured's knowledge. The state court found the lender had no rights as to the insurer in the absence of a valid authorization by the insured to enter a premium financing transaction. *Id.*, at 1635.

Plaintiff similarly relies upon *Pacific Automobile Insurance Company v. Wolff*, 72 Cal. App. 3d 537, 540–42 (1977), in which the court considered, and rejected, the insured's argument that early termination was not permitted by § 673 unless the premium financing agreement was personally signed by the insured. *Wolff* held that the only writing required by § 673 is of the assignment of the right to cancel, which may be signed by the insured or its agent. *Id. Wolff* did not, however, hold that an insurer was required to verify the existence of such a writing. According to *Wolff*, "[Section 673] provides that the lender's . . . instructions to cancel are conclusive for all purposes with respect to the insurer. Thus, once the lender has instructed the

---

[2] Mountain West's compliance with the requirements of § 673 is not at issue here.

insurer to cancel, the cancellation is effective." *Id.*, at 540–41. Plaintiff may be correct that, if this is the rule, the remainder of the state court's discussion in *Wolff* is superfluous. That court's decision, however, to address and reject other arguments presented by the insured in that case does not negate the general rule established in § 673.

Defendant, too, overstates the significance of the cases upon which it relies. Two of them expressly recount evidence of a valid transfer of the right to cancel from the insured to the premium finance company. *See, e.g., Pac. Bus. Connections, Inc. v. St. Paul Surplus Lines Ins. Co.*, 150 Cal. App. 4th 517, 519 (2007) ("the financing contract '[i]rrevocably appoint[ed]' Premium as PBC's attorney-in-fact 'with . . . full authority upon any default to cancel' the insurance policy"); *Gorham Co., Inc. v. First Fin. Ins. Co.*, 139 Cal. App. 4th 1532, 1540 & n.7 (2006) (similar). The third held only that the insurer will not be held liable for any alleged infirmity in the notice provided by the lender to the insured as required by § 673. *Holland v. Sterling Casualty Inc. Co.*, 25 Cal. App. 4th 1059, 1064 (1994).

Considered as a whole, these cases support Mt. Hawley's proffered reading of § 673 as entitling the insurer to rely upon the lender's cancellation notice without requiring it to investigate further the underlying contract between the insured and the lender. As stated in *Holland*, "Section 673, subdivision (i), clearly provides that when a premium financing lender gives an insurer written notice that it is exercising the right to cancel a policy, the lender thereby represents to the insurer that it has the right to exercise said right of cancellation; and if the lender thereby obtains such a cancellation, the lender's representation is conclusive as between the lender and the insurer. By cancelling the policy, such an insurer . . . acts in accordance with section 673. That section does not impose any additional notice requirements on the insurer." *Holland*, 25 Cal. App. 4th at 1064. Although subdivision (i) does not speak directly to a dispute between the insured and the insurer, the statutory provision that a lender's written notice of cancellation to an insurer "thereby represents that he or she has a valid right to do so" would be meaningless if the insurer was required to verify independently the lender's authority to exercise the right to cancellation, as urged by JMA.

No. 13-cv-04581 RS
Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion

9

1    As provided by § 673, Mountain West's notice represented that it had the authority to act on Golden Gate's behalf.  Mt. Hawley is not only entitled to rely on that notice, it is required to act thereon to cancel the policy and issue a premium refund.  *See Holland*, 25 Cal. App. 4th at 1063.  Whether Mountain West in fact had such authority, and whether it fulfilled its notice obligations to Golden Gate as provided for in § 673, is between Mountain West and Golden Gate.  The insurance code provides that the notice of cancellation is "conclusive" as between the insurer and the lender.  Because JMA has not met its burden to show that Golden Gate had valid coverage at the time it performed work on JMA's property, it cannot prove Mt. Hawley had a duty to defend or indemnify Golden Gate in the underlying action.

B. Waiver and Estoppel

JMA next argues that either implied waiver or estoppel precludes Mt. Hawley from asserting termination of the policy.  Neither argument is persuasive.

"Waiver is an intentional relinquishment of a known right after knowledge of the facts," which may be express or implied.  *Waller*, 11 Cal.4th at 31–32.  In the insurance context, "denial of coverage on one ground does not, absent clear and convincing evidence suggesting otherwise, impliedly waive grounds not stated in the denial."  *Id.* at 31 (citing *State Farm v. Jioras*, 24 Cal. App. 4th 1619, 1628, n.7 (1994) (no waiver of coverage defenses by insurer failing to specify exclusions in letter reserving rights)).  Although Mt. Hawley's denial letters to Golden Gate failed to reference the correct policy end date, each letter indicated the insurer reserved all rights to assert any other applicable exclusions or bases for denial.

Nor is JMA entitled to a finding of estoppel.  The elements of the doctrine of equitable estoppel are fourfold: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."  *City of Goleta v. Superior Court*, 40 Cal.4th 270, 279 (2006).

As to the first element, it is clear Mt. Hawley knew that the policy was canceled effective August 27, 2003, even if its attorney was ignorant of that fact when he responded to Golden Gate's tender of its defense in 2008. As to the second, a jury could reasonably infer from the evidence that Mt. Hawley intended for both Golden Gate and JMA, as the third-party beneficiary of the policy, in the underlying action to rely on its representations regarding the policy terms, particularly to the extent it provided a copy of the policy which omitted any endorsement concerning early termination.

As to the third element, neither Golden Gate nor its assignee, JMA, can plausibly claim they were ignorant of the true state of facts at the time they negotiated their settlement of the underlying action. Mt. Hawley has submitted ample evidence that Golden Gate knew of the early termination date either directly (via communications from Target or Mountain West) or indirectly through notice to its authorized insurance agent, Target. For example, Target's file includes a facsimile letter sent to Golden Gate informing the company that Mountain West had not received Golden Gate's premium payment and that it was in danger of losing coverage (Barber Dec, Ex. 2, TF014), a letter to Deniz Salon of Golden Gate enclosing the cancellation endorsement (*id.*, TF017), and a copy of the refund check mailed to Golden Gate on December 15, 2003. Even if none of these communications reached Golden Gate, notice to its agent Target was sufficient to put the principal, Golden Gate, on notice. See *Marsh & McLennan of Calif. V. City of Los Angeles*, 62 Cal.App.3d 108, 117 (1976) (as a matter of law, an independent retail insurance broker is the agent of the insured).[3]

---

[3] In support of its estoppel theory, JMA has submitted a declaration by Salon that neither he nor Golden Gate received any notice of intent to cancel the Mt. Hawley policy or of actual cancellation of the policy. (Dkt. No. 26, ¶ 4.) Mt. Hawley has moved to strike Salon's declaration on the basis that plaintiff did not provide contact information for Salon. See Fed. R. Civ. Proc. 26(a)(1), 26(e), 37(c)(1). In support of that motion, Mt. Hawley submitted a series of emails between its counsel and counsel for JMA suggesting JMA's counsel was attempting to withhold the witness's contact information under a misapprehension that the information would be protected by the attorney-client privilege. In response, JMA submitted a supplemental declaration after the hearing that it has, in fact, provided Mt. Hawley with Salon's contact information. It is not necessary to resolve this dispute because, in any case, a bare declaration by Salon that he did not receive notice, standing alone, does not raise a triable issue of fact to rebut the mailbox presumption given the evidence that multiple notices were sent to Salon and Golden Gate's attention by Lemac and Target. *See Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d

As the assignee, JMA can have no greater rights in this action than Golden Gate. Because Golden Gate had at least constructive knowledge that its policy had been terminated before work began on JMA's property, neither it nor its assignee, JMA, can assert estoppel against Mt. Hawley on this issue. Mt. Hawley is, therefore, entitled to summary judgment on the first and second claims in the complaint for declaratory relief on the duty to defend and the duty to indemnify.

C. Policy Exclusions

In light of the foregoing analysis, it is not necessary to address the applicable policy exclusions at length. In brief, Mt. Hawley cites three different policy exclusions relevant to this action. First, two related exclusions exclude damage to the insured's own work. Exclusion j(5) excludes property damage to "[t]hat particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations." Exclusion j(6) applies to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly applied on it." In other words, "[t]he contractor bears the risk of repairing or replacing faulty workmanship, while the insurer bears the risk of damage to the property of others." *Clarendon America ins. Co. v General Security Indem. Co.*, 193 Cal. App. 4th 1311, 1325 (2011). Both provisions, moreover, preclude coverage when construction was completed after the policy expired. "Thus, if [plaintiff's] claims encompassed property damage that occurred while [plaintiff] or its subcontractors were performing operations on the property, no coverage would exist." *Id.*; *see also Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal. App. 4th 96, 103 (2003) (no coverage when construction completed after policy expired).

It is Mt. Hawley's burden to show that the exclusions apply and that the evidence before the court demonstrates not even "a bare 'potential' or 'possibility' of coverage" that might trigger Mt. Hawley's duty to defend. *Montrose Chem. Corp.*, 6 Cal. 4th 287 (1993). That it has not done, assuming for the moment that the policy remained in effect through May 7, 2003.

---

956, 964 (9th Cir. 2001). Nor does it negate evidence that Golden Gate had actual knowledge through its agent, Target.

Although it is undisputed that Golden Gate's work on JMA's property extended into 2006, JMA argues the work was conducted in phases and that Golden Gate caused damage to the hotel's existing hardwood floors during the initial phase of renovations. While Mt. Hawley cannot be liable for damage or poor workmanship in Golden Gate's own work on the property, neither j(5) nor j(6) extends to damage to the remainder of JMA's property as a result of Golden Gate's work. As such, "[t]his exclusion cannot be the basis for summary judgment because [the insurer] failed to produce evidence to show . . . that all of the damage for which [JMA] sought to recover was damage to the 'particular part of real property'" on which Golden Gate was performing work. *Roger H Proulx & Co. Crest-Liners, Inc.*, 98 Cal. App. 4th 182, 202 (2002); *see also McGranahan v. Insurance Corporation o/New York*, 554 F.Supp.2d 1052, 1059-60 (E.D. Cal. 2008) (question of fact existed as to whether damage from moldy drywall extended to other parts of residences, e.g. cabinets, light fixtures and floors, precluding the court from finding the "your work" exclusion barred the insurer's duty to defend). For the same reason, Mt. Hawley's reliance on exclusion (l), which applies to "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products completed operations hazard'" would not provide a basis for summary judgment on the duty to defend if the policy were still in effect at the relevant time.

D. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

As to plaintiffs' third and fifth causes of action, Mt. Hawley is correct that, because it had no duty to defend or indemnify Golden Gate in the underlying action as the policy was no longer in effect during the relevant time period, its disclaimer of coverage could not have breached either the insurance contract or the implied covenant of good faith and fair dealing. "It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36. For that reason, Mt. Hawley is entitled to summary judgment on plaintiff's third and fifth claims.

E.  <u>Equitable Contribution</u>

Finally, JMA, as the assignee of insurer James River Insurance, seeks reimbursement for defendant's obligation to reimburse that insurer for its equitable share of defense costs incurred on behalf of Golden Gate up through the time the underlying action was settled.  For the reasons stated above, Mt. Hawley did not owe Golden Gate a duty to defend and therefore is not liable for equitable contribution to James River.  Mt. Hawley is, therefore, entitled to summary judgment on plaintiff's fourth claim.

## V.  CONCLUSION

For the forgoing reasons, plaintiff's partial motion for summary judgment is denied.  Defendant's motion for summary judgment is granted as to all claims for relief in the complaint.  The case is therefore dismissed.

IT IS SO ORDERED.

DATED:  May 19, 2014

_____
RICHARD SEEBORG
United States District Judge